AYRES, Judge.
This is an action by lessor against his lessee for rent allegedly due for the remainder of the term of a lease under an acceleration clause. There was judgment in favor of plaintiff and defendant appealed.
The premises consist of a lower floor of a two-story building of concrete-block construction. The use of the building was restricted to the operation of an electrical contractor and motor-rewinding business. The upper floor consisted of rooms or apartments generally rented to and occupied by students at Louisiana Polytechnic Institute. The term of the lease was for a period of five years beginning November 1, 1965, at a price of $100 per month, payable in advance. The lease provided that “failure to pay any one monthly installment when due shall cause all remaining unpaid installments to become-due and payable at the option of the holder of said lease.” Lessee’s having removed from and vacated the premises on or about September 30, 1968, pursuant to prior notice to lessor that he would consider the lease terminated as of that date, and having failed to pay the rent for the month of October, 1968, this action was instituted November 19, 1968.
The defense is that the lease was terminated by lessor’s failure to maintain the premises in a condition fit for its normal use. The clause in the lease relied upon provided:
“In the event that the leased building shall be destroyed or so substantially damaged as to prevent normal use thereof by Lessee, by fire, lightning, tornado or otherwise, this lease shall terminate unless Lessor shall promptly begin the reerecting and with due diligence complete the reerection thereof in substantially the same manner as it now exists. All rentals agreed to be paid hereunder shall abate for the period beginning with such destruction or damage and until the same shall be restored as hereinabove provided.”
After inspecting the property, defendant entered into the lease contract and moved into the premises which had theretofore served as a warehouse. A portion was selected by defendant for office space which he, at his own expense, paneled and walled off for that purpose.
*152 The first complaint of the lessee related to the gas service at the time he moved into the premises. A test made before turning the gas on disclosed a leak somewhere in the building. Plaintiff, on notice, sent workmen to make the necessary repairs. Their effort was unsuccessful. However, defendant employed a plumber to make the necessary repairs, which were satisfactorily done. Charges therefor were deducted by lessee from the rent.
No other complaints of consequence were made until December, 1967, when a commode in an apartment overflowed, and water ran through the ceiling onto the ground floor. The water was turned off. Within a few days the situation was corrected by the lessor’s making the necessary repairs or replacements.
Complaints with reference to water coming through open windows, above, or seeping through the walls were made in the spring of 1968, during the course of exceedingly heavy rains. The roof was good; no leaks existed there. Whatever carelessness existed on the part of the occupants of the apartments above, in leaving the windows open, was apparently corrected.
Without making any complaints as to any then existing condition, lessee notified lessor August 12, 1968, that he intended to vacate the premises on or before September 30, 1968. His decision was based upon conditions already mentioned which theretofore existed and which had been corrected. In reply, plaintiff explained he had contacted the other tenants with respect to the complaint that windows had been left open. He stated, moreover, if defendant had further trouble he would correct it, and assured defendant of his determination to keep defendant in peaceful possession of the premises. This assurance was unacceptable, whereupon, defendant, after moving out, mailed plaintiff the keys to the premises.
The evidence in the record, the major portion to which we have made reference, does not establish that the building was either destroyed or so substantially damaged as to prevent its normal use, or as to effect a termination of the lease. There is no evidence that any particular demand was made upon plaintiff or notice given of any specific defect or damage prior to plaintiff’s vacation of the building. Nor were any specifications made with reference to what defendant had in mind or as to what needed to be done. No opportunity was afforded plaintiff to more fully comply with the contract in making repairs that he should have made. Thus, plaintiff was not placed in default.
A lessor is bound not only to deliver the premises leased to the lessee, and to maintain him in peaceful possession thereof during continuance of the lease, but to maintain them in condition such as to serve the use for which they are hired. LSA-C.C. Art. 2692. Thus, a lessor is bound to make, during the continuance of the lease, all the repairs which may accidentally become necessary, except those which the tenant is bound to make. LSA-C.C. Art. 2693. However, if the lessor does not make the repairs above mentioned, the lessee may call upon him to make them. If the lessor then fails to make the repairs, the lessee may make or cause them to be made and deduct their cost from the rent, on establishing the repairs were indispensable and that the price was just and reasonable. LSA-C.C. Art. 2694.
A tenant, however, though privileged to make such repairs, is not obligated or compelled to do so. Goldstein v. Stone, 12 La.App. 702, 127 So. 73 (Orl.1930). But a putting in default, in conformity with the provisions of LSA-C.C. Art. 1911(2), is required in suits for the rescission of contracts, including leases, where the lessor is not deemed to be in default under the terms of the contract by mere failure or by the operation of law. Thus, as observed hereinabove, plaintiff has not been placed in default. Cancellation or abrogation of leases is not favored by law. Meyers v. Drewes, 196 So.2d 607 (La.App., *153 4th Cir. 1967); Stoltz v. McConnell, 202 So.2d 451 (La.App., 4th Cir. 1967 — writs refused).
For the reasons assigned, the judgment appealed is affirmed at defendant-appellant’s costs.
Affirmed.