| STEWART, J.
The issues presented in this appeal concern a lien and writ of attachment issued against immovable property to secure payment for work performed by Mid-South Environmental Services, Inc., (“Mid-South”), the plaintiff herein. The subject property is part of the Estate of Andrew Eugene Sandidge (“the Estate”), a defendant herein along with the executor, J.R. Sandidge (“Sandidge”). Because we find that Sandidge cannot by his contracts create liability against the Estate, we hold that the plaintiffs petition fails to state a cause of action against the Estate, order cancellation of both the lien and writ of attachment, vacate the trial court’s judgment, and dismiss Mid-South’s claim against the Estate.
FACTS
The unrecorded contract from which this matter stems was confected on September 28, 2001 between the Estate of A.E. San-didge and Mid-South for the “remediation, hauling, transfer, processing, treatment and/or disposal of certain industrial, oilfield and/or hazardous waste material.” This “Environmental Services Agreement” was signed by the Estate’s executor, J.R. Sandidge, and William Massey, an employee of Mid-South. Sandidge sought Mid-South’s assistance because an oil well located on Estate property in Bossier Parish was leaking salt water, and the situation had been brought to the attention of the Louisiana Department of Natural Resources, which was prepared to declare the well to be in emergency status. After Mid-South began work on the project, a dispute arose as to the cost.
Mid-South filed a “Petition for Damages With Non Resident Writ of Attachment” against the Estate of Andrew Eugene San-didge, and its |P,executor, J.R. Sandidge, on *642 May 3, 2001.[1] The petition alleged the existence of a contract between the parties, whereby Mid-South agreed to provide environmental remediation and disposal services dealing with certain property in Bossier Parish. The petition further alleged that defendants owed a balance of $16,440 and that a lien was filed on January 10, 2001. Mid-South sought a writ of attachment based on the alleged non-residency of the Estate and its lack of an appointed agent for service of process in Louisiana. Mid-South prayed for issuance of the writ, judgment in the amount of the sum due with reasonable attorney fees, recognition of its privilege, and payment of its claim from the proceeds of the sale of the property. The writ of attachment was granted on May 4, 2001, the day after the filing of the petition.
On June 29, 2001, the defendants filed an answer denying the validity of the lien. Defendants also filed a reconventional demand alleging that the writ of attachment was wrongfully issued. According to the reconventional demand, the Estate was judicially opened in the First Judicial District, Caddo Parish, and the testamentary executor, Sandidge, had appointed an agent for service of process as to all actions and proceedings with respect to the succession. Defendants sought damages and attorney fees for wrongful issuance of the writ of attachment. Defendants further sought cancellation of the lien, which it alleged to be untimely and improperly filed.
|3On November 8, 2001, defendants filed a rule to show cause why the lien and writ of attachment should not be dissolved and canceled and Mid-South ordered to pay damages and attorney fees. After a hearing on the rule to show cause, the trial court rendered a judgment ordering the writ of attachment dissolved and canceled, dismissing the rule as it pertained to cancellation of the lien, ordering Mid-South to pay attorney fees in the amount of $750, and splitting the costs between the parties. Mid-South appealed the judgment and asserted that the trial court erred in canceling the writ of attachment and in ordering it to pay attorney fees. The defendants answered the appeal to seek review of the trial court’s failure to dissolve the lien and failure to award reasonable attorney fees.
DISCUSSION
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act. La. C.C.P. art. 3191. The succession representative shall preserve, repair, maintain, and protect the property of the succession. La. C.C.P. art. 3221. However, a succession representative cannot by his contracts bind the succession. Hamilton v. McKee, 371 So.2d 1115 (La.1979); Succession of Huxen, 149 La. 61, 88 So. 687 (La.1921); Succession of Boyter, 33,749 (La.App.2d Cir.8/23/00), 766 So.2d 623; Succession of Rivers, 97-542 (La. App. 3d Cir.10/8/97), 702 So.2d 910, writ denied, 97-2676 (La.1/9/98), 705 So.2d 1108. As explained in Comment (a) of La. C.C.P. art 3221:
*643 It is the duty of the succession representative to make necessary expenditures for the preservation of succession property, as for instance, repairs, insurance, and taxes. Although a representative cannot by his contracts bind the succession, he is nevertheless entitled to reimbursement for proper expenditures.
(Citations omitted.)
An instructive explanation of the duties of the succession representative with regard to third party contracts was provided at 27 Tul.L.Rev. 87 (1952), Powers of a Succession Representative In Louisiana, which states at page 94:
The personal representative generally cannot subject the estate to a direct liability to third persons. An “estate” cannot become a party to a contract since it is neither a person nor an artificial entity. Personal liability attaches to any contract which the representative makes, notwithstanding testamentary or court authority. The third party must look to the succession representative personally for claims arising out of contracts which the representative makes, and the representative, in turn, may be reimbursed for a proper expenditure from the assets of the estate upon the settlement of accounts. Since the representative as a prudent administrator is under a duty to preserve succession property, expenditures for the preservation of succession property, such as repairs, insurance and taxes, are proper expenses.
(Citations and footnotes omitted.)
This language was cited by the supreme court in Hamilton v. McKee, supra, which held that a succession representative did not have the power to obligate the succession to sell property at a private sale without obtaining court approval and that obtaining after-the-fact court authorization to sell did not make the previously unauthorized agreement enforceable. Although the sale of succession property is governed by specific procedural articles | ¿requiring prior court authorization, the underlying basis of the Hamilton decision is the prohibition against allowing the succession representative to bind the succession by his contracts.
The Code of Civil Procedure sets forth specific actions which the succession representative might do in fulfilling his duties and which require prior court authorization and/or notice. These actions include compromising an action or modifying the terms of an obligation (La.C.C.P.art.3198), investing funds of the succession (La.C.C.P. art. 3228), operating a business of the deceased (La.C.C.P. arts. 3224, 3224.1 and 3225), leasing succession property (La.C.C.P. art. 3226), performing an executory contract which was left unperformed at death (La.C.C.P. art. 3227), borrowing money and encumbering property (La.C.C.P. art. 3228), and selling succession property (La.C.C.P. art. 3261). The contract at issue in the case sub judice does not appear to be among those situations in which court authorization can be obtained. Therefore, the rule that the succession representative is personally liable applies. To the extent this debt would qualify as a debt incurred for the preservation of succession property, the succession representative has a claim for reimbursement which the jurisprudence indicates is a privileged debt ranking above the debts of unsecured creditors of the succession. See Succession of Rhodes, 164 La. 488, 114 So. 107 (1927).
In the instant case, Sandidge, acting as executor of the Estate, contracted with Mid-South for work on immovable property belonging to the Estate. However, Sandidge, by contracting with Mid-South, could not lflbind the Estate. Nor could the Estate, without court authority *644 as in the limited situations listed above, be a party to a contract. Having no contractual relationship with the Estate, Mid-South cannot seek an unauthorized encumbrance against Estate property or obtain a writ of attachment against such property. Its claim is against Sandidge individually, and he has not been made a defendant in this action in his personal capacity.
Mid-South filed a lien in accordance with the Private Works Act, La. R.S. 9:4801 et seq., which grants a contractor a privilege on immovable property for the price of the work done on the immovable to secure the obligation of the owner. La. R.S. 9:4801(1). According to Comment (a) of La. R.S. 9:4801, the privilege “presupposes a direct contractual relationship between the privilege holder and the owner.” As has been determined, no such contractual relationship exists in this instance since Sandidge, the executor, has no authority to bind or create any liability on the Estate through his contracts.
An appellate court may, of its own motion, supply the exception of no cause of action. La. C.C.P. art. 927; Thompson v. Pardue, 401 So.2d 497 (La.App. 2d Cir.1981). We do so here and order the plaintiffs suit against the Estate dismissed for its failure to state a cause of action against the Estate, through its executor, for enforcement of the alleged contractual obligation.
La. C.C.P. art. 3506 provides that damages, including attorney fees as an element thereof, may be allowed for wrongful issuance of a writ of |7attachment on a motion to dissolve or on a reconven-tional demand. Neither a motion to dissolve nor a reconventional demand was the basis for the dissolution of the writ in this instance. As such, we find that an award of attorney fees to the Estate is not due. Likewise, we find no basis for an award of attorney fees for cancellation of the lien.
CONCLUSION
For the reasons expressed, we hereby vacate the trial court’s judgment and order the dismissal of the plaintiffs claim and the dissolution and cancellation of the lien and writ of attachment. Costs are assessed against the plaintiff, Mi-South Environmental Services, Inc.
VACATED and DISMISSED.
APPLICATION FOR REHEARING
Before, BROWN, C.J., STEWART, CARAWAY, KOSTELKA, and HARRISON, JJ.
Rehearing denied.

. A succession representative is the proper party defendant for suits against an estate until a judgment of possession is signed. La. C.C.P. art. 3249; State Through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990). Based on the pleadings, we interpret Mid-South’s suit to be against the Estate and Sandidge in his capacity as executor, and not against J.R. Sandidge individually.